UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EAST LONGMEADOW PUBLIC SCHOOLS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-30090-MGM |
| v. | ) ) | |
| TALIB DOE, by and through his Parents, JOHN and JANE DOE and BUREAU OF SPECIAL EDUCATION APPEALS, | ) ) ) ) ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTION TO DISMISS COMPLAINT FOR JUDICIAL REVIEW FROM STATE
ADMINISTRATIVE AGENCY
(Dkt. No. 13)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

        Plaintiff East Longmeadow Public Schools ("East Longmeadow" or "the Town") filed a

complaint pursuant to the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §

1415(i)(2)(A), seeking judicial review of a decision by the Commonwealth of Massachusetts

Bureau of Special Education Appeals ("BSEA") (Dkt. No. 1).  The BSEA ruled that the Town

improperly terminated defendant Talib Doe's ("Talib") participation in his special education

program.  Before the court is a motion to dismiss filed by defendants Talib Doe and his parents

(collectively, "the Doe Family") invoking Fed. R. Civ. P. 12(b)(1) and 12(b)(7) and contending

that: (1) the court lacks subject matter jurisdiction because there is no federal question in the

case; (2) East Longmeadow failed to exhaust administrative remedies; and (3) East Longmeadow

failed to name Springfield, which is a required party (Dkt. No. 13).  The motion was referred to

this court for a report and recommendation (Dkt. Nos. 24, 31).  *See* 28 U.S.C. § 636(b)(1)(B).
Following a hearing (Dkt. No. 26), the court recommends that the Doe Family's motion to
dismiss be denied and that the court order that Springfield be joined as a required party pursuant
to Fed. R. Civ. P. 19(a)(1)(A) and (a)(2).[1]

II.    S<span>TATEMENT OF</span> F<span>ACTS</span>

East Longmeadow alleges that Talib is a 7 or 8-year-old minor who has been diagnosed
with autism (Dkt. No. 1 at 2, 4, ¶¶ 3, 10).  He has attended school in East Longmeadow,
receiving special education services in a partial inclusion program and making effective progress
(*id.* at 4, ¶ 13).  Talib's parents are not married.  His father, Mr. Doe, is a life-long resident of
East Longmeadow, where Mr. Doe's parents reside.  Talib's mother, Ms. Doe, lives in
Springfield (*id.* at 5, ¶¶ 15-16).  In January 2017, the East Longmeadow Clerk received an
anonymous letter stating that Talib was not a resident of East Longmeadow and was illegally
attending school in East Longmeadow (*id.* at 7, ¶ 29).  In February 2017, the East Longmeadow
Town Manager received a letter making a similar charge (*id.*, ¶ 30).  East Longmeadow hired an
investigator to conduct a residency investigation and also directed the assistant principal at
Talib's school to conduct a residency investigation (*id.* at 7-8, ¶¶ 31-32, 36).  The investigator
conducted surveillance of Ms. Doe's Springfield residence in February and March 2017.  Based
on his surveillance, the investigator concluded that Talib lived in Springfield with Ms. Doe (*id.* at
8-9, ¶¶ 37, 43).

---

[1] Defendant BSEA has not joined in the Doe Family's motion to dismiss.  BSEA's position is
that this court has subject matter jurisdiction over East Longmeadow's complaint.  BSEA further
asserts that joinder of Springfield as a party is required and feasible pursuant to Fed. R. Civ. P.
19(a) (Dkt. No. 20).

Based on the parallel residency investigations, the East Longmeadow Superintendent of Schools concluded that Talib lived in Springfield, not East Longmeadow.  On March 7, 2017, the Superintendent wrote to Ms. Doe enclosing a copy of the investigator's report and a statement from the assistant school principal about the results of her residency investigation (*id.* at 10, ¶¶ 45-47).  In response, Talib's grandmother told the Superintendent that, because she was undergoing cancer treatment, the doctor had advised that Talib should not reside with her (*id.*, ¶ 48).  On Friday, March 10, 2017, the Superintendent directed that Talib be withdrawn as a student from the East Longmeadow Meadow Brook Elementary School (*id.* at ¶ 49).

On March 17, 2017, a family member of Talib filed a BSEA Hearing Request Form requesting an expedited special education hearing (*id.* at 11, ¶ 53, Dkt. No. 20-1).  The Hearing Request Form filled out by Talib's family member provided that the decision on the hearing request could "be appealed to federal or state court within 90 days of issuance of the decision" (Dkt. No. 20-1 at 1).  Talib was permitted to return to school in East Longmeadow pending resolution of the dispute (Dkt. No. 1 at 11, ¶ 54).  A BSEA hearing was held on March 31, 2017 (*id.* at 13, ¶ 70).  In an April 18, 2017 decision, the BSEA Hearing Officer found that East Longmeadow had improperly terminated Talib's participation in his special education program based on lack of residency (*id.* at 14, ¶ 71).  East Longmeadow's complaint in this court asserts a single count pursuant to the IDEA and the Massachusetts Special Education Act, Mass. Gen. Laws ch. 71B ("Chapter 71B"), claiming that the decision of the BSEA Hearing Officer was arbitrary and capricious and otherwise not in accordance with the law (*id.* at 16, ¶¶ 87-89).

III.    STATUTORY CONTEXT

The IDEA is a statutory scheme enacted by Congress "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special

education and related services . . .; [and] that the rights of children with disabilities and parents

of such children are protected."  42 U.S.C. § 1400(d)(1)(A)-(B).  "In exchange for federal

funding, the States must provide all disabled children with a [free appropriate public education]. .

. .  Massachusetts law requires that local school districts provide disabled children a [free

appropriate public education] as defined by the IDEA and state regulations."  *Dracut Sch.*

*Comm. v. Bureau of Special Educ. Appeals of the Mass. Dep't of Elementary and Secondary*

*Educ.*, 737 F. Supp. 2d 35, 41 (D. Mass. 2010) (citing 20 U.S.C. § 1401(9)(B); Chapter 71B, §§

1-3).  "Congress designed IDEA as a scheme of cooperative federalism."  *Rosenfeld v. N.*

*Kingstown Sch. Dep't*, C.A. No. 13-222S, 2013 WL 4042658, at *4 (D.R.I. Apr. 30, 2013)

(citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63-64 (1st Cir. 2002); *Town of Burlington*

*v. Dep't of Educ.*, 736 F.2d 773, 785 (1st Cir. 1984); *Kevin G. ex rel. Jo-Ann G. v. Cranston Sch.*

*Comm.*, 965 F. Supp. 261, 262 (D.R.I. 1997)).  "Congress drew the procedural and substantive

contours of education for disabled children, but left the shading and tinting of the details largely

to the states.  States are responsible for filling in the numerous interstices within the federal Act

through their own statutes and regulations."  *Town of Burlington*, 736 F.2d at 785.

One of the interstices in the IDEA that must be filled in by a participating state is the

question of payment for special education services.  "[T]he IDEA contains no provision dictating

which district or agency within a state must assume financial liability for special education

services."  *Manchester Sch. Dist. v. Crisman*, 306 F.3d 1, 9-10 (1st Cir. 2002).  Rather, "[t]he

federal statute . . . leaves the assignment and allocation of financial responsibility for special

education cost of local school districts to each individual state's legislature."  *Id*. at 10.  In

Massachusetts, those responsibilities are set forth in the Code of Massachusetts Regulations at

603 Code Mass. Regs. 28.10, the provisions of which assign programmatic and financial

responsibilities for special education services to school districts based on student residency and

enrollment.

IV.   DISCUSSION

Standard of Review

A district court reviewing a motion to dismiss for lack of subject matter jurisdiction under

Fed. R. Civ. P. 12(b)(1) credits a plaintiff's properly pleaded allegations and draws all reasonable

inferences from the facts alleged in the complaint in the plaintiff's favor.  In addition to the

complaint, the court may consider other materials and evidence in the record, whether or not the

facts in those materials are consistent with the allegations in the complaint.  East Longmeadow,

the party asserting this court's subject matter jurisdiction, bears the burden of showing that

subject matter jurisdiction exists.  *See Beaudreau v. Berryhill*, Civil No. 17-cv-032-JD, 2017 WL

2656104, at *1 (D.N.H. June 20, 2017) (citing and quoting *Reddy v. Foster*, 845 F.3d 493, 497

(1st Cir. 2017); citing *Acosta-Ramirez v. Banco Popular de P.R.*, 712 F.3d 14, 20 (1st Cir. 2013);

*Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007)).  The standard of

review for a motion relying on Fed. R. Civ. P. 12(b)(7) is the same.  *See Davis Cos. v. Emerald

Casino, Inc.*, 268 F.3d 477, 479 n.4 (7th Cir. 2001) ("In ruling on a dismissal for lack of joinder

of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence.")

(citing *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *Capital Leasing Co. v. Fed. Deposit

Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)).  "'[T]he moving party carries the burden of

showing why an absent party should be joined.'"  *J & J Sports Prods., Inc. v. Cela*, 139 F. Supp.

3d 495, 499 (D. Mass. 2015) (quoting *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32

(D. Mass. 2000)); *see also Phoenix Ins. Co. v. Delangis*, Civil Action No. 14-10689-GAO, 2015

WL 1137819, at *2 (D. Mass. Mar. 13, 2015) (acknowledging that the First Circuit has not yet

5

addressed the question of which party carries the burden on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(7); collecting cases assigning the burden to the moving party).

In this case, in addition to East Longmeadow's complaint, the court has taken into account the contents of the Hearing Request Form attached as an exhibit to the Bureau's Response to Talib Doe's Motion to Dismiss and East Longmeadow's Opposition to the Motion to Dismiss (Dkt. Nos. 20, 20-1).

    1.  <u>East Longmeadow Properly Invoked this Court's Subject Matter Jurisdiction</u>.

The Doe Family contends that this court lacks subject matter jurisdiction in this action because the question of who has programmatic and financial responsibility for providing special education services to Talib is one of state law and there are no other questions raised by East Longmeadow's complaint.  East Longmeadow (supported by the Bureau) contends that it properly filed its complaint in this court because the BSEA was tasked with deciding whether East Longmeadow improperly denied the free appropriate public education to Talib that is mandated by the IDEA, and East Longmeadow, as the party aggrieved by the BSEA findings and rulings deciding this question, has a right to bring suit in a federal district court under the IDEA. In the court's view, East Longmeadow (and the Bureau) have the better of the arguments.

  "While the primary IDEA enforcement mechanisms are administrative, the Act permits any 'aggrieved party' to file suit in state or federal court without regard to the amount in controversy, subject to exhaustion requirements; under IDEA, federal and state courts have concurrent jurisdiction."  *Rosenfeld*, 2013 WL 4042658, at *4 (citing 20 U.S.C. §§ 1415(i)(2), 3(A); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005); *Frazier*, 276 F.3d at 59; *Charlie F. ex rel. Neil F. v. Bd. of Educ.*, 98 F.3d 989, 993 (7th Cir. 1996)).  "The IDEA . . . provides parents with an opportunity to lodge formal complaints 'with respect to any matter relating to the

identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to such child.'" *Frazier*, 276 F.3d at 58 (quoting 20 U.S.C. § 1415(b)(6)).

In Massachusetts, a formal complaint alleging a failure to provide a free appropriate public education to a child with disabilities may be filed with the BSEA. 603 Mass. Code Regs. 28.08(3). On March 16, 2017, a parent of Talib filed a Hearing Request Form requesting an expedited special education appeals hearing in accordance with federal and state statutes on the grounds that East Longmeadow had wrongfully terminated Talib's educational rights and Talib was not in school and was not being provided with a free appropriate public education (Dkt. No. 20-1). The Hearing Request Form alleged a violation of the IDEA because it raised a matter relating to the "provision of a free appropriate public education" to Talib. More precisely, the hearing form alleged that East Longmeadow was violating the IDEA and state law by failing to provide to Talib the educational services he was entitled to under the IDEA and state law. *Cf. Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 51 (1st Cir. 2002) (a child's mother who claimed that the school committee retaliated against her had standing to bring a claim under the IDEA because her retaliation claim was related to her efforts "to gain for [her son] 'the provision of a free appropriate public education'").

When, as in this case, a party elects to file a written request for a hearing, regulations require the prompt assignment of a hearing officer to the case. 603 Mass. Code Regs. 28.08(5). "Decisions of a BSEA Hearing Officer are not reviewable by the state education agency, but an *aggrieved party* may seek a compliance order for a decision that is not being implemented, 603 Code Mass. Regs. 28.08(6), and may request judicial review by filing an action in state or federal court." *Dracut Sch. Comm.*, 737 F. Supp. 2d at 42  (citing 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516). The BSEA hearing was held on March 31, 2017 (Dkt. No. 1 at 13, ¶ 70). The BSEA

hearing officer ruled that East Longmeadow improperly terminated Talib's participation in his special education program, thereby failing to comply with its IDEA obligations (*id*. at 14, ¶ 71). East Longmeadow, as the party aggrieved by this decision, filed this action in federal court pursuant to 20 U.S.C. § 1415(i)(2), which provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy."  20 U.S.C. § 1415(i)(3)(A).  "'This simple and direct grant of jurisdiction empowers the [federal] Court to consider all claims regarding the decisions of the [State Review Officer].'"  *Rosenfeld*, 2013 WL 4042658, at *4 (alterations in original) (quoting *N.Y.C. Dep't of Educ. v. S.S.*, No. 09 Civ. 810(CM), 2010 WL 983719, at *7 (S.D.N.Y. Mar. 17, 2010)).

As early as 1984, the United States Court of Appeals for the First Circuit addressed a district court's responsibility to interpret and apply state law when ruling on claims arising under the IDEA.  In *Town of Burlington*, a municipality brought suit challenging the decision of the Hearing Officer, which required a student's placement in a private school for special education purposes.  *Town of Burlington*, 736 F.3d at 779.  In a section of the opinion ruling on the scope of a district court's review of the state administrative proceedings, the First Circuit held that, when a district court is ruling on the adequacy of a student's individual education plan, the court's inquiry "must include a determination whether the state substantive standard exceeds the protection and services required by the federal Act."  *Id.* at 789.  If the state substantive standards are more protective than federal standards, the federal district court must interpret and apply those more protective state standards for purposes of determining what is required for an appropriate education for a disabled child.  *Id.*  It follows that the mere fact that state law provides the rule of decision as to an issue concerning the provision of services required by the IDEA – such as the question of which school district bears the financial responsibility for

providing a disabled child with a free appropriate public education – does not deprive the federal

courts of subject matter jurisdiction over such a dispute.

The Doe Family has cited no case holding that claims arising under the IDEA which are

resolved by reference to state law are not within the jurisdiction of the federal courts.  To the

contrary, in the *Crisman* case, the First Circuit ruled on a question very similar to the question

raised in East Longmeadow's complaint without pausing to consider the question of its subject

matter jurisdiction.  *Cf. McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law

that a federal court has an obligation to inquire sua sponte into its own subject matter

jurisdiction.") (citing *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988); Fed. R.

Civ. P. 12(h)(3)).  In the *Crisman* case, the First Circuit interpreted and applied New Hampshire

law in affirming the judgment of the district court about which of two school districts in New

Hampshire was required to bear the costs of a disabled child's education.  *Crisman.*, 301 F.3d at

13 ("Given New Hampshire's statutory framework, we find ourselves in accord with the rulings

of the district court.").  That Massachusetts law governs this case does not deprive the court of

subject matter jurisdiction over the question of East Longmeadow's alleged IDEA violation.  *See*

*id.; cf. Ross v. Framingham Sch. Comm.*, 44 F. Supp. 2d 104, 112 (D. Mass. 1999) (in an IDEA

case, legal rulings of a state educational agency are subject to nondeferential review "even if the

rulings of law concern interpretation of a state statute or state judicial decisions rather than

federal law"); *see also Rosenfeld*, 2013 WL 4042658, at ** 6-8.

    2.  <u>East Longmeadow Did Not Fail To Exhaust Its Administrative Remedies</u>.

In this court's view, the Doe Family's contention that East Longmeadow failed to exhaust

its administrative remedies also fails.  A member of the Doe Family filed a request for an

expedited hearing before a BSEA hearing officer on the grounds that East Longmeadow was

violating the IDEA and Chapter 71B by failing and refusing to provide a free appropriate public education to Talib (Dkt. No. 20-1).  The Doe Family prevailed before the hearing officer, leaving East Longmeadow as the aggrieved party.  State regulations governing the continuum of options for dispute resolution, 603 Code Mass. Regs. 28.08(6), provide that the decision of the hearing officer of the BSEA "shall be implemented immediately and shall not be subject to reconsideration by the Bureau of Special Education Appeals or the Department, but may be appealed to a court of competent jurisdiction."  The regulations explicitly provide that, as the party aggrieved by the BSEA hearing officer's ruling, East Longmeadow's only avenue of relief was a suit challenging the decision, which East Longmeadow could file in state or federal court. *See* 20 U.S.C. § 1415(2)(A).

In contending that East Longmeadow failed to exhaust its administrative remedies, the Doe Family points to the provisions of 603 Code Mass. Regs. 28.10(9)(b), which set out the process by which a school district such as East Longmeadow may appeal from an assignment by the Department of Elementary and Secondary Education ("the Department") of programmatic and financial responsibility for a student's special education services.  The complaint does not allege that the Department assigned East Longmeadow the responsibility for providing services to Talib, nor has the Doe Family furnished any extrinsic evidence or material showing that the Department ever made any such an assignment.  Thus, the provisions of 603 Code Mass. Regs. 28.10(9)(b) cited by the Doe Family do not apply.

The Doe Family apparently contends that East Longmeadow failed to exhaust its administrative remedies because it did not request the assistance of the Department with respect to assignment of programmatic and financial responsibility for educational services to Talib before the Superintendent of East Longmeadow "directed [on March 10, 2017] that Talib be

withdrawn from Meadow Brook Elementary School" (Dkt. No. 1 at 10, ¶ 49; Dkt. No. 14 at 8-9). In addition to faulting East Longmeadow for failing to request the assistance of the Department for purposes of assigning responsibility for Talib's education, the Doe Family contends that there is no evidence in the record to show that East Longmeadow complied with any of the provisions that govern appeals from an assignment decision by the Department (Dkt. No. 14 at 9).  It is for this reason that the Doe Family contends that East Longmeadow failed to exhaust administrative remedies and is not entitled to appeal from the BSEA decision.  The Doe Family's contention fails because the provisions of 603 Code Mass. Regs. 28.10(8) and (9) did not apply in this case.

Section 28.08 of 603 Code Mass. Regs. ("Section 8") is entitled "Department Assignments of School District Responsibility."  Section 8 applies to students living in situations described in 603 Code Mass. Regs. 28.10(3), (4), or (5) and provides, in pertinent part, that the Department may assign, or a school district "may request the Department's assistance in assigning a city, town, or school district to be responsible for students in living situations described in 603 CMR 28.10(3), (4), or (5) in [certain] circumstances."  603 Code Mass. Regs. 28.10(8)(a).  First, there is no evidence in the record that the Department assigned East Longmeadow the responsibility for providing special education services for Talib, thereby giving rise to a decision by the Department from which East Longmeadow could have appealed.  And, as the BSEA contends, East Longmeadow was not required, by the terms of Section 8, to request the Department's assistance with a reassignment of responsibility for Talib's educational services because Section 8 merely provides that a school district "may" request the Department's assistance with reassignment.  "'[T]he word 'may,' . . . implies discretion, [while] the word 'shall' usually connotes a requirement.'"  *Jennings v. Rodriguez*, 138 S.Ct. 830, 844 (2018) (quoting *Kingdomware Techs., Inc. v. U.S.*, 136 S.Ct. 1969, 1977 (2016)).  There can be no

doubt that the Department, as author of the regulations implementing Chapter 71B, intended the discretionary character of Section 8 as "other [regulatory] neighbors show that, when [the Department] wished unambiguously to [require an act], 'it knew how to do so.'" *Duncan v. Walker*, 533 U.S. 167, 188 (Souter, J. concurring) (quoting *Custis v. U.S.*, 511 U.S. 485, 492 (1994)).  By way of example, sub-section 1 of 603 Code Mass. Regs 28.10 provides that "[s]chool districts *shall* be programmatically and financially responsible for eligible students based on residency and enrollment."  *See also* 603 Code Mass. Regs. 28.10(2) ("The school district where the student resides *shall* have both programmatic and financial responsibility under the following circumstances: . . ."); 603 Code Mass. Regs. 28.10(3) (using term "shall"); 603 Code Mass. Regs. 28.10(4) (same); 603 Code Mass. Regs. 28.10(6) (same); 603 Code Mass. Regs. 28.10(7) (same).  Because Section 8 is discretionary, not mandatory, East Longmeadow was not required to avail itself of the Department's assistance in connection with the assignment of responsibility for Talib's special education services and did not fail to exhaust its administrative remedies.

        3.     <u>Joinder of Required Parties</u>.

The Doe Family's final contention is that this case must be dismissed because East Longmeadow failed to include the Department and Springfield as parties to this action.  The Doe Family premises this contention on its argument that East Longmeadow failed to exhaust its administrative remedies because it did not seek the Department's assistance for purposes of reassigning Talib to Springfield as a student.  According to the Doe Family, adding the Department and Springfield as parties at this stage is not feasible because joining them "would negate the principles of [administrative] exhaustion" that the Doe Family claims applied to East Longmeadow's termination of educational services to Talib (Dkt. No. 14 at 11-12).  For its part,

East Longmeadow denies that Springfield or the Department is a necessary party (Dkt. No. 17 at

6-7).  BSEA contends that Springfield (but not the Department) is a required party, but takes the

position that, under the IDEA and Fed. R. Civ. P. 19(a)(2), Springfield can be added as a party

by an order of this Court (Dkt. No. 20 at 5-6).

"Rule 19 deals with the situation where 'a lawsuit is proceeding without a party whose

interests are central to the suit.'"  *Phoenix Ins. Co.*, 2015 WL 1137819, at *3 (quoting *Bacardi

Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir.), *cert. denied*, 134 S.Ct. 640 (2013); *Charest

v. Fed. Nat'l Mortg. Assoc.*, 9 F. Supp. 3d 114, 119 (D. Mass. 2014)).  In considering a motion

brought pursuant to Fed. R. Civ. P. 12(b)(7), a district court must be mindful of "the policies that

underlie Rule 19, 'including the public interest in preventing multiple and repetitive litigation,

the interest of the present parties in obtaining complete and effective relief in a single action, and

the interest of absentees in avoiding the possible prejudicial effect of deciding the case without

them.'"  *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15-16 (1st Cir. 2008) (quoting *Acton Co. v.

Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)).

> Rule 19 lays out a two-step process.  Starting with Rule 19(a), the judge first
> decides whether, if the absentees can be joined, they must be joined (absentees
> cannot be joined if, for example, service-of-process or subject-matter-jurisdiction
> problems exist).  *See* Fed. R. Civ. P. 19(a)(1).  One scenario in which the judge
> ought to join them (if they can be joined) is if he cannot "accord complete relief
> among the existing parties" without their joinder.  Absentees that meet the Rule-
> 19(a)(1) standard are called "required part[ies]" (once called "necessary parties"
> in days gone by, *see [Republic of Philippines v.] Pimental*, 533 U.S. [851,] . . .
> 855 . . . [(2008)]).  And if the judge identifies such parties, he then looks to Rule
> 19(a)(2) – a rule that says that if they have "not been joined as required, the
> [judge] must order that they be made . . . part[ies]."  *See Askew* [*v. Sheriff of Cook
> Cty., Ill.*,] 568 F.3d [632,] 635 [(7th Cir. 2009)] (quoting Rule 19(a)(2)).  As one
> prominent treatise pithily puts it, if an absentee's joinder is "feasible" and
> required "for a just adjudication," the judge "must order" joinder since he "has no
> discretion at this point because of" Rule 19(a)(2)'s "mandatory language."  7
> Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
> Procedure* § 1611, at 158-62 (3d ed. 2001) (footnotes omitted).

*Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*, 889 F.3d 30, 37 (1st Cir. 2018) (footnote omitted; third and fourth alterations in original).  If an absent party is required but cannot be joined, a judge must consider whether the suit can proceed without this absent party.  *Id.*

The Doe Family has not met their burden of showing that the Department is a required party.  The Department was not involved in the decision by East Longmeadow that caused a member of the Doe Family to file the Hearing Request Form, nor, as set forth above, was it required to be involved.  The Doe Family has not explained why the relief that East Longmeadow seeks – a reversal of the BSEA decision and assignment to Springfield of programmatic and financial responsibility for Talib's education – would require the presence of the Department.  Further, the Doe Family has not shown that the Department has an interest in the litigation that will be impaired by its resolution in the Department's absence or that the Department will be exposed to inconsistent obligations if East Longmeadow's suit proceeds in its present posture.  *See* Fed. R. Civ. P. 19(a)(1); *see also J & J Sports Prods., Inc.*, 139 F. Supp. 3d at 504-05 (the court declined to dismiss the case for lack of a required party where the court could grant complete relief to the plaintiff and the defendant; neither party had identified an absent party who had an interest relating to the action; and the supposed required party would not be subject to inconsistent adjudications if the court resolved the dispute before it between the existing parties).  Because the Doe Family has not met its burden of showing why the Department is a required party for resolution of the dispute between the parties, the absence of the Department does not warrant dismissal of the action.

Springfield occupies a different position than does the Department in the Rule 19 analysis.  In its prayer for relief, East Longmeadow's complaint requests that this court reverse the BSEA's ruling "and order Talib to be enrolled in the Springfield Public Schools" (Dkt. No. 1

at 17).  Thus, East Longmeadow seeks entry of a judgment by this court that would require

Springfield to accept and enroll Talib as a student and provide special education services to him.

If this case were to proceed without Springfield as a party, however, Springfield "would not be

bound by a judgment" concerning the obligation to provide educational services to Talib.  *Z & B*

*Enters., Inc. v. Tastee-Freez Int'l, Inc.*, 162 Fed. Appx. 16, 20 (1st Cir. 2006) (unpublished) (the

parties to certain contracts would not be bound by a judgment concerning the invalidity or

enforceability of those contracts if they were not joined as parties in the case in which the

plaintiffs were challenging the contracts); *see also Picciotto*, 512 F.3d at 16 (a ruling against an

absent party would not be binding in related litigation in which the absent party was named); 7

C.A. Wright, A.R. Miller & M.K. Kay, *Federal Practice and Procedure* § 1611, at 163 (a

judgment does not bind an absent party).

      An issue similar to that presented by the failure to name Springfield was briefly

considered in the context of the IDEA in a Report and Recommendation issued in *Fauconier v.*

*Comm. on Special Educ.,* No. 02 CIV.1050 RCC RLE, 2002 WL 31235786 (S.D.N.Y. Oct. 2,

2002), *adopted*, 2003 WL 21345549 (June 10, 2003), *aff'd*, 112 Fed. App'x 85 (2d Cir. 2004).

In the *Fauconier* case, the defendants, who were the local school district and the New York City

Board of Education, moved for dismissal of the plaintiff father's IDEA complaint, filed on behalf

of his son, on the ground, among others, that the father had failed to join the child's mother, who

was the custodial parent, as a party.  In a brief discussion, the court noted that "an absent party is

considered necessary if the court's judgment would require the absent party to do something or

change its position."  *Id.* at *5.  The court further noted that because the mother lived within the

court's jurisdiction, the presiding judge could order that the mother be joined as a party.

Accordingly, the Magistrate Judge recommended that the defendants' request that the complaint be dismissed for failure to join a necessary party be denied.[2]  *Id.*

As a practical matter, Springfield has the same interest at stake in this suit as does East Longmeadow.  "In general, when a parent brings an action on behalf of her child, challenging the provision of a free and appropriate education as required under the [IDEA], the independent school district within which the child's school is located is considered a real party in interest to the action."  *Guthrie v. Circle of Life*, 176 F. Supp. 2d 919, 922 (D. Minn. 2001) (citing *Moubry v. Kreb*, 58 F. Supp. 2d 1041, 1051 (D. Minn. 1999)).  If East Longmeadow is successful in its challenge to the BSEA ruling, Springfield likely will be required to assume programmatic and financial responsibility for Talib's special education services.  East Longmeadow has gone to some length in seeking to establish a factual basis to avoid this responsibility.  Springfield is entitled to the opportunity to be heard before there is a definitive ruling on this question.  *See Picciotto*, 512 F.3d at 15-16 (Rule 19(a) directs the court to consider as a practical matter the possible effects of a judgment on an absent party).  For the foregoing reasons, the undersigned recommends that the court find that Springfield is a required defendant as that term is defined in Fed. R. Civ. P. 19(a)(1).

Joining Springfield appears feasible as that term is used in case law interpreting Fed. R. Civ. P. 19(a).  Generally, joinder is not feasible when "it would defeat subject-matter jurisdiction, or the party is beyond the personal jurisdiction of the court, or the party has and

_____

[2] The Report and Recommendation ultimately recommended dismissal without prejudice because the father could not, as a *pro se* litigant, represent the interests of his son.  *Fauconier*, 2002 WL 31235786, at *5.  The presiding District Judge adopted the Magistrate Judge's recommendation and additionally found the suit barred by the *Rooker-Feldman* doctrine*,* 2003 WL 21345549 (S.D.N.Y. June 10, 2003), a ruling that was affirmed on appeal.  112 Fed. App'x 85 (2d Cir. 2004).

makes a valid objection to venue." *Askew v. Sheriff of Cook County*, 568 F.3d 632, 634-35 (7th Cir. 2009); *see also Delgado-Caraballo*, 889 F.3d at 36. Joining Springfield would not destroy the court's subject matter jurisdiction because the basis of jurisdiction here is a federal question – East Longmeadow's claim arises under the IDEA – and the court has personal jurisdiction over Springfield, which is a municipality located in this district. *See Askew*, 568 F.3d at 636. Springfield would have "no conceivable defense to venue, which is proper in a federal-question case where (among other places) a substantial part of the events giving rise to the claim occurred." *Id.* All of the events giving rise to East Longmeadow's complaint occurred in Hampden County, where the municipalities of Springfield and East Longmeadow are located. Hampden County is in the District of Massachusetts.

As to further proceedings in this case if the court adopts this Report and Recommendation, the IDEA provides, in pertinent part, as follows:

In any action brought under [20 U.S.C. § 1415((i)(2)], the court –

> (i)   shall receive the records of the administrative proceedings;
> (ii)  shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415((i)(2)(C). "Judicial review of administrative decisions in IDEA cases 'requires a more critical appraisal . . . than clear error review' but 'nevertheless, falls well short of complete *de novo* review." *Doe v. Cape Elizabeth Sch. Dist.*, 832 F.3d 69, 82 (1st Cir. 2016) (quoting *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir. 1993)). "[A] court must make 'bounded independent decisions – bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court,'" *id.* (quoting *Town of Burlington*, 736 F.2d at 791). There is room under the IDEA and case law interpreting the IDEA to permit the court to consider the question raised in this case

17

based on the administrative record and additional evidence, if any, tendered by Springfield if it is

added as a party while still giving due deference to the administrative decision under review.

*See id.* at 83-84; *Town of Burlington*, 736 F.2d at 790 (the "additional evidence" provision in the

IDEA does not authorize witnesses to repeat or embellish testimony they gave at the

administrative hearing in proceedings before the district court; the term "additional evidence" as

it is used in the IDEA should be new evidence that is admitted in view of the circumstances of

the case and the record established at the administrative hearing).

5.   CONCLUSION

For the foregoing reasons, the court recommends that the Doe Family's Motion to

Dismiss Complaint for Judicial Review from State Administrative Agency (Dkt. No. 13) be

denied.[3]

DATED:  July 17, 2018                              /s/ Katherine A. Robertson
                                                   KATHERINE A. ROBERTSON
                                                   U.S. MAGISTRATE JUDGE

_____

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P.
59(b), any party who objects to these findings and recommendations must file a written objection
with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and
Recommendation.  The written objection must specifically identify the portion of the proposed
findings or recommendations to which objection is made and the basis for such objection.  The
parties are further advised that failure to comply with this rule shall preclude further appellate
review by the Court of Appeals of the District Court order entered pursuant to this Report and
Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.
1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702
F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park
Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*,
474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen
(14) days after being served with a copy thereof.